Voss & Co. v. Robertson, Brown & Co.

---

# VOSS & CO. *vs.* ROBERTSON, BROWN & CO.

[TRIAL OF RIGHT OF PROPERTY, &C.]

1. *Agent, authority to sell; what does not authorize.*—An authority to an agent to sell goods, does not authorize him to pledge them.
2. *Bill of lading; how far negotiable.*—A bill of lading is only *quasi* negotiable, and is not subject to the rule that the owner of negotiable paper can not protect himself against a *bona fide* holder for valuable consideration, on the ground that he did not authorize it to be used except for some particular purpose.
3. *Liens; how lost.*—Liens at law exist only in cases where the party entitled to them has the possession of the goods. If the possession be parted with, the lien is gone after it attaches.

APPEAL from the Circuit Court of Mobile.
Tried before Hon. JOHN ELLIOTT.

On the 18th day of March, 1868, one J. A. Powell, being indebted to Robertson, Brown & Co., the appellees, in the sum of $370 72-100, they, on that day, sued out an attachment against him, which was immediately levied upon twelve bales of cotton, which were delivered to appellants upon making the statutory affidavit that they had a just claim thereto, and executing the proper bond, &c.

Powell having failed to appear at the trial term, judg-

ment by default was rendered against him, and trial was had of the right of property in the cotton levied on, under the claim filed by the appellants.

On the trial, there was evidence tending to show that Powell was the owner of the cotton levied on and claimed by the appellants, who set up title in themselves by reason of the transactions hereinafter stated:

On the 11th day of March, 1868. G. W. Hayes delivered to the Selma & Meridian Railroad Company thirteen bales of cotton, to be shipped to A. A. Voss & Co., (of which the twelve bales of cotton levied on were part,) and took the bill of lading therefor in his own name. On the 16th day of March, Hayes delivered this bill of lading to A. A. Voss & Co., the appellants, grocery merchants in Mobile, and who were in the habit of receiving cotton "for sale in the usual way," and thereupon they advanced said Hayes on the cotton $1,000, which they borrowed from Murphy & Co., to whom the cotton was delivered, to be sold by them as usual among cotton factors and commission merchants. On the same day, Hayes drew a draft on appellants in favor of one Johnson for whatever balance might result from the sale of the cotton, with the understanding and agreement that this draft was to be placed to the credit of Johnson on an account due by him to Voss & Co., and this was to close up the whole of the transaction between Hayes and Voss & Co. On the next day, this last "draft was shown to Johnson, who had come to the store of said Voss & Co., with said Powell, and Johnson remarked that it was all right."

In May or June, 1868, the cotton was sold, and the amount arising therefrom, after paying the $1,000 advance and expenses, was placed to the credit of said Johnson; and before this sale, but some time after the advance was made, Powell notified appellants of his claim to the cotton.

The evidence was conflicting as to whether or no Hayes had express authority from Powell to sell the cotton; but the evidence was positive that Voss & Co. had no notice whatever but that Hayes was the owner of the cotton, until after the $1,000 had been advanced and the draft

drawn by Hayes against the cotton for the balance of the proceeds in favor of Johnson, and that they made this advance *bona fide* in the way usual among cotton factors and merchants, on the faith of said cotton.

This was in substance all the evidence, and thereupon the court charged the jury that " although they might believe from the evidence that Powell authorized said Hayes to ship and sell his cotton, still this would not authorize Hayes to pledge the cotton for his own debt, or for any advance made to him, Hayes; that if it was not sold to claimants, but left with them to be sold, and although claimants may have advanced $1,000 to Hayes for himself, still, claimants could not be protected against the plaintiff, Powell." To this charge appellants excepted.

The appellants then asked the court to charge the jury that " if the claimants had a lien on said cotton for such advances, and delivered said cotton to Murphy & Co., to be held by said Murphy & Co. as their bailees or agents, then their lien continued on said cotton in said Murphy & Co.'s possession." This charge the court gave with the qualification, that "if the jury should believe from the evidence that claimants parted with the possession of said cotton, and had no longer any control over it, and the levy of the attachment was made before they regained the same, said lien was lost, and could not prevail against the plaintiff." To this charge, as qualified, claimants (appellants) excepted.

The last charge given by the court, at the instance of the plaintiffs, was as follows: " If the jury believe from the evidence that Hayes was Powell's agent, and that he had authority to take the advance from Voss & Co., and thus created a lien on the cotton in their favor to the amount of the $1,000 advance, still, the balance of the proceeds of the cotton was subject to plaintiff's attachment, subject to the lien of Voss & Co., and the attachment being levied before the cotton was sold and the proceeds placed to the credit of Johnson on authority [of the order] drawn by Hayes, said attachment stopped said balance in the hands of Voss & Co. as Powell's property, and

the jury must find the balance of the proceeds of such cotton, after satisfying the debt due Voss & Co., to be the property of Powell, and liable to the satisfaction of the debt due by him to plaintiffs." To this charge the appellants excepted.

There was a verdict for the plaintiffs, (the appellees,) and hence this appeal. The charges given by the court, and the qualification of the charge asked, are now assigned for error.

WM. BOYLES, and MORGAN, BRAGG & THORINGTON, for appellants.

R. H. SMITH, *contra.*

(No briefs came into Reporter's hands.)

B. F. SAFFOLD, J.—A line of separation between the respective rights of a principal, and of a third party, to protection against each other on account of the tort of an agent, is not easily defined. One who has clothed his agent with all the apparent muniments of an absolute title, and authorized him to dispose of the property, as sole owner, ought rather to suffer than one whom his conduct has enabled his agent to impose on. On the other hand, immunity to the third person on account of innocence of intention merely, would destroy all rights of property. One who deals with another respecting property, must be charged with the responsibility of that other's right or authority to dispose of it as he claims to do.

An agent to sell has no authority to pledge the goods of his principal, although the property be entrusted to him, and the pledgee be ignorant that he is an agent.—Story on Agency, §§ 224, 78, 437 ; *Bott v. McCoy & Johnson,* 20 Ala. 578. A bill of lading is rather *quasi* negotiable than actually so, and consequently is not subject to the rule that the owner of negotiable paper can not protect himself against a *bona fide* holder for valuable consideration, on the ground that he did not authorize it to be used except

for some particular purpose.—Pars. on Cont. p. 600, 601, 239 ; 6 East, 17, 538.

The charges given by the court are in conformity with the above principles. The qualification to the charge asked by the claimants asserted a correct proposition. Liens at law exist only in cases where the party entitled to them has the possession of the goods ; and if he once part with the possession after the lien attaches, the lien is gone. *Lickbarron v. Mason*, 6 East, 21–27. It is unnecessary to consider the last charge given at the request of the plaintiffs. The verdict was not affected by it.

The judgment is affirmed.

[NOTE BY REPORTER.—At a subsequent day of the term the appellant's counsel applied for a rehearing, or at least a modification of the opinion, and filed in support thereof the following argument] :

The proposition is certainly true, that as between the principal and the agent, or as between the agent and a third person, dealing with the agent with notice of his agency, a power to sell will not authorize a pledge. But this is not a case arising between the principal and the agent, nor is it a case arising between the principal and a third party, who has dealt with the agent with notice of the agency. Voss & Co. had no notice that Hayes was an agent, nor was there any circumstance from which they could infer that fact. The bill of lading was in the name of Hayes ; the cotton was under his control and in his possession ; everything went to show that he was the owner of it ; and Voss & Co. dealt with him as the owner of the cotton. Therefore, it is respectfully submitted, that the charge of the court below was erroneous. As between Voss & Co., and the plaintiffs and Powell, the facts do not show that the question of Hayes' agency could be raised to the prejudice of Voss & Co. and to invalidate a transaction they had effected with Hayes in good faith on their part and without notice of any agency. "As a general rule, he who employs an agent shall lose by his fraudulent, negligent or illegal

act, rather than an innocent person. It is a universal rule, based on principles of policy, propriety and justice, that if a principal puts his agent in a condition to impose on innocent third persons, by apparently pursuing his authority, he shall be bound by his acts."—*Dunning & Smith v. Roberts*, 35 Barb. p. 463; 33 Barb. pp. 17, 18, and cases there cited. The real question in this case, as we respectfully submit, is not what power was intended to be given to the agent, but what power a third person who dealt with the agent had a right to infer he possessed, from his own acts and those of his principal.—1 Peters (S. C.) Rep. pp. 444, 445; 8 How. (U. S.) Rep. p. 384; *Copeland v. Touchstone*, 16 Ala. pp. 333, 334, and authorities there cited.

A factor is an agent.—1 Bouvier, p. 306. By the bill of lading, the cotton was consigned to appellants. The sale by Murphy & Co. is the same in principle as if it had been made by appellants. It is submitted that the cotton was not pledged to appellants, but that the money advanced was a sale *pro tanto* to Voss & Co., and that, as to the extent of this amount advanced, Voss & Co. stood in the attitude of *bona fide* purchasers. In support of this proposition, we particularly refer to the case of *Hall v. Hinks et al.*, 21 Maryland Reports, pp. 416, 417, and authorities there cited.

A factor, who is nothing but an agent, deals with goods entrusted to his principal as if they were his own, and all persons to whom he disposes of them may set off or retain the amount of the factor's indebtedness when an action is brought for the price, either by the factor or his principal. 13 Johnson, p. 9; Paley on Agency, 326.

The effect of a consignment of goods, generally, is to vest the property in the consignees.—17 Howard, 107. If Powell consented that Hayes should ship said cotton to Mobile as his own, and in his own name, consigned by bill of lading to Voss & Co., and the latter in good faith made advances on it to Hayes, then it is submitted that Powell is estopped by his own act; and if Powell is estopped, it would follow that his creditors would be.

In *Gardner & Sayre v. Allen's Executors*, 6 Ala. p. 187,

this court say—" Where one purchases goods of a factor, under the belief, authorized by the facts of the case, *that the latter was the real owner*, he may set off a debt due him from the factor, to an action for the purchase-money, brought either by the factor or his principal."—See, also, Story on Agency, § 420, and authorities there cited.

Upon the hypothesis, warranted by the proof, that Powell authorized Hayes to ship the cotton to Voss & Co., and take a bill of lading in his own name, then Powell concealed his name. This was a fraud. In such a case, the purchaser of goods, before they are paid for, may, in an action by the principal, set off a debt due him from the factor, upon the ground that the parties by their conduct having contracted with him in that character, they can not recover against him without allowing the same advantages and equities in his defense that he would have had against the agent. In these cases it is held that it makes no difference whether the sale by the agent is under a *del credere* commission or not.—10 Wendell, p. 495, and the cases there cited.

If the view that we take of this case is correct, then, it is respectfully submitted, with great deference, that the case of *Bott v. McCoy & Johnson*, 20 Ala. p. 383, has no application to the real point involved in this case. That case only asserts the principle that the factor is not authorized to pledge the goods of his principal for his own use. But the point we rely upon in this case is that Powell permitted Hayes to ship the cotton to Voss & Co., who were named in the bill of lading as consignees, upon their paying freight, &c., this bill of lading being taken in the name of Hayes, thereby enabling Hayes to perpetrate a fraud upon Voss & Co., in obtaining from them $1,000 as an advance upon said cotton, and dispose of it as his (Hayes') own property, and that by this act Powell is estopped from asserting any claim to the proceeds of said cotton against parties who stand in the attitude of purchasers for value, in good faith, without notice, and that Powell being estopped, his creditors, the appellees, are also estopped.

32

For the same reason we respectfully submit that the principle asserted in *McCombie v. Davies*, 6 East, pp. 540, 541, can have no controlling influence in this case. In *McCombie v. Davies*, there were no facts tending to show that McCombie, as principal, had conferred any authority upon his agent, Coddan, which authorized the latter to pledge the tobacco to Davies. Here the proof shows that such authority was given by Powell to Hayes to deal with the property as his own, and this is shown by the fact that Hayes had taken the bill of lading for the cotton in his own name. Powell having put it in the power of Hayes to perpetrate a fraud upon appellants, in such case the rule is that when one of two innocent persons must suffer by the fraud of a third, the loss must fall upon him who is in fault. 6 Denio, p. 232 ; 4 Denio, 327 ; Story on Sales, § 313.

Upon the face of the proceeding in the transaction with Voss & Co., Hayes was not an agent, but a principal ; there was nothing to show that Hayes was not the owner of the cotton ; but, on the contrary, every fact and circumstance went to show that he was the owner of the cotton, for it was shipped in his name in the bill of lading, and he had the bill of lading for it.

On the foregoing grounds your petitioners respectfully pray for a re-hearing in said cause, and, the premises considered, that the said judgment rendered at the present term of this honorable court may be set aside and vacated, or that the same may be modified, so far as the $1,000 advanced by Voss & Co. is concerned.

The following response was made by—

SAFFOLD, J.—The declaration which the appellant desires the court to make, is, that the cotton receipt given by the Selma and Meridian Railroad Company to Hayes for thirteen bales of cotton, to be carried to Mobile and delivered to Voss & Co., as consignees, was such evidence of title in Hayes as justified Voss & Co. in dealing with him as the owner of the cotton. This could only be so in case the cotton receipt was a negotiable instrument. It is not

so recognized by the commercial law, and we are not authorized to confer upon it that authority.

A re-hearing is denied.