(92 South. 533)

## GARY v. STATE.   (6 Div. 7.)

(Court of Appeals of Alabama.  Jan. 31, 1922.)

**1. Indictment and information ⬤⇒75(1) — Indictment containing obvious clerical error sufficient.**

The inadvertent insertion of the word "house" in an indictment for murder so as to make it read that defendant killed decedent "by house cutting him with a knife" did not prevent the indictment from being sufficient, as this error was so apparent as to correct itself.

**2. Indictment and information ⬤⇒75(1), 79— Where meaning of indictment is clear, inaccuracies or errors in spelling not fatal.**

Where the sense of an indictment is clear, technical exceptions are not favorably regarded, and verbal inaccuracies which are explained by necessary intendment from other parts of the indictment, or errors of spelling not obscuring the sense are not fatal.

**3. Criminal law ⬤⇒867—Separation of jury before examination of witnesses not ground for mistrial and continuance.**

In a murder trial, a refusal to grant a mistrial and continuance because a juror, after the case was at issue, but before the examination of witnesses, went alone into the jury room, was proper.

**4. Criminal law ⬤⇒366(2)—Evidence as to decedent's acts held not part of res gestæ.**

In a murder trial, evidence that decedent ran defendant's brother out of the mines on the day before the killing was not admissible as part of the res gestæ.

**5. Homicide ⬤⇒236(1)—Evidence held to show that defendant's blow caused decedent's death.**

Evidence *held* to warrant jury's finding that the blow struck by defendant caused decedent's death.

**6. Homicide ⬤⇒188(6)—Evidence of decedent's reputation for carrying pistol held inadmissible.**

Where decedent had no weapon at the time he was killed, it was not error to exclude evidence that he had a reputation for carrying a pistol, no evidence having been introduced that defendant knew this, and the court not having been told *that such evidence would be offered later.*

**7. Homicide ⬤⇒188(6)—Decedent's reputation for carrying a gun inadmissible.**

In a murder trial, it was not error to exclude evidence as to decedent's reputation for carrying a gun, a gun not being readily hid about the person, and defendant could see that decedent did not have one at the time of the killing.

**8. Homicide ⬤⇒191—Details of prior difficulty with another party not admissible to show mental attitude.**

In a murder trial, evidence that decedent had run defendant's brother out of the mines was not admissible, as details of a prior dif-

ficulty with another party are not admissible even to show mental attitude.

**9. Homicide ⬤⇒158(1) — Previous threats by defendant held admissible.**

Testimony that defendant told witness on the day before the killing that he did not need a search warrant to "tend to this nigger" (decedent) was admissible as a threat made by defendant.

**10. Witnesses ⬤⇒236(1) — Evidence of decedent's trouble with other parties not admissible on direct examination.**

Testimony that decedent had had trouble with other parties at another time and place could not be shown by defendant in examining his own witnesses.

**11. Criminal law ⬤⇒396(2)—Where one party testified as to conversation, adverse party entitled to give his version.**

Where one party has testified as to a conversation, the other party has a right to bring out all that was said or give his version of the same conversation.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Otis Gary was convicted of murder in the second degree, and he appeals. Reversed and remanded.

F. D. McArthur, of Birmingham, for appellant.

A mistrial should have been entered and a continuance granted because of the separation of the jury. 45 Ala. 59. The demurrer to the evidence should have been sustained. 1 Mayfield, 415. It was competent to show that the deceased was in the habit of carrying a pistol and that this was known to the defendant. 133 Ala. 138, 32 South. 227; 116 Ala. 463, 23 South. 26; 200 Ala. 384, 76 South. 300. Where parts of a conversation are brought out the other party is entitled to all the conversation. 197 Ala. 128. 72 South. 403; 10 R. C. L. 935. The court erred in refusing the charges requested. 151 Ala. 55, 44 South. 84; 177 Ala. 28, 59 South. 270.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

SAMFORD, J.  [1] The indictment was as follows:

"The grand jury of said county charge that before the finding of this indictment Otis Gary unlawfully and with malice aforethought killed John Trimble, alias Rock, by house cutting him with a knife, against the peace and dignity of the state of Alabama."

Demurrer was interposed seeking to have the indictment declared bad because the word "house" in some way had been written

into the indictment in such way as to render the charge meaningless. This is clearly a "lapsus pennæ," and does not render the indictment meaningless. On the contrary, the error is so apparent as to correct itself.

[2] The rule heretofore followed and which we now reaffirm is:

"If the sense of an indictment is clear, technical exceptions thereto should not be favorably regarded, and verbal inaccuracies or clerical errors which are explained and corrected by necessary intendment from other parts of the indictment, or errors of spelling not obscuring the sense, are not fatal." Couch v. State, 6 Ala. App. 43, 60 South. 539; Sanders v. State 2 Ala. App. 13, 56 South. 69; Grant v. State, 55 Ala. 201; Holland v. State, 11 Ala. App. 134, 66 South. 126.

[3] After the jury had been selected and the cause was at issue, and just before the examination of witnesses was begun, and while the solicitor was in the jury room conversing with witnesses, one of the jurors, without the permission of the court, left the jury box, went to the rear of the courtroom and into a jury room, and from thence into a toilet adjacent to and opening only into the jury room. The court bailiff was at the time either in the vestibule between the courtroom and the jury room or in the jury room while the juror was in the toilet. It is not shown or claimed that the juror saw or spoke to any one. On the return of the juror to his seat on the jury, defendant moved for a mistrial and continuance. This motion was overruled. In a case similar to this the Supreme Court held that the defendant had not suffered injury and refused to reverse the judgment on that ground. While we recognize the rule which requires of trial courts the greatest care in giving to defendants a fair trial, we are not only bound by the holding of the Supreme Court, but concur in its conclusion. Sanders v. State, 181 Ala. 35, 61 South. 336.

[4] As to whether the dead man ran the brother of defendant out of the mines on the day before the killing was immaterial and irrelevant, and certainly is not a part of the res gestæ, nor could it shed any light upon the difficulty then being inquired into. At the time this evidence was offered, according to the testimony then before the court, the attack by defendant was entirely unwarranted, without any demonstration having been made on the part of the dead man.

[5] At the conclusion of the state's testimony, defendant moved to exclude the entire evidence on the ground that the evidence for the state failed to establish the fact that the blow struck by defendant caused the death of deceased. While it is undoubtedly the law that a causal connection must be shown between the blow stricken by defendant and the death of deceased, and that this fact must be proven beyond a reasonable doubt. such fact can be established by circumstances as well as by direct evidence, and where it is made to appear that the defendant struck the deceased with an open knife, the blade penetrating the temple and breaking off in the wound, that the deceased was taken from the scene of the difficulty to a hospital, and on the next day was dead, and the only wound found on him by the undertaker who examined the body was the knife wound in the temple, the jury is warranted in finding that the knife wound was the cause of death, unless the defendant should by proof rebut this presumption by showing facts from which the jury might reach a different conclusion or that would create a reasonable doubt in the minds of the jury that the causal connection existed. 13 R. C. L. p. 747, § 52; Hollywood v. State, 19 Wyo. 495, 120 Pac. 471, 122 Pac. 588, Ann. Cas. 1913E, 218.

[6] To put the court in error for having sustained the state's objection to the question asked by defendant's counsel of defendant's witness Anderson, "Do you know whether he [deceased] had the reputation of carrying a pistol or not?" it was necessary for the defendant to have stated to the court his intention to offer evidence connecting the evidence sought with the defendant. It was shown without conflict that the deceased had no weapon at the time he was killed; therefore the evidence sought would have been admissible for the limited purpose only of showing the reasonableness of defendant's hostile interpretation of a movement on the part of deceased, and at the time the question was asked there was no evidence that the defendant knew of any such reputation or habit of deceased. By a failure to inform the court that he expected to make such proof the court cannot be put in error for having sustained the objection to the question asked. Glover v. State, 200 Ala. 384, 76 South. 300; Sims v. State, 139 Ala. 74, 36 South. 138, 101 Am. St. Rep. 17; Rodgers v. State, 144 Ala. 32, 40 South. 572.

[7] The court properly sustained the state's objection to the question asked by defendant's counsel of the witness Monroe, "Do you know whether he [deceased] had the reputation of carrying a gun or not and defendant knew it?" The evidence was without conflict that deceased had no gun at the time of the difficulty, and it is not claimed that deceased made any demonstration towards any place where a gun might have been. It is a matter of common knowledge that a gun is a weapon not readily hidden about the person, and, even if the defendant did know the deceased was in the habit of carrying a gun, he could readily see that deceased did not have one with him at the time of the fatal difficulty.

For reasons given above assignment of

error 7 is not well taken, and in addition the question made the basis of this insistence is too general.

Besides, as affecting the substantial rights of defendant, the defendant was permitted to testify, without objection and without dispute, "I know that he [deceased] had the reputation of carrying a gun."

[8] That, if it be a fact, that deceased at some prior date had run defendant's brother out of the mines, was not admissible, if for no other reason, that it was an effort to prove details of a prior difficulty, with a different party, and, even if the fact of a prior difficulty between deceased and defendant's brother was admissible to show the mental attitude of defendant at the time of the difficulty, the details of that difficulty were not admissible.

[9] The testimony of the witness Lee Cox that the defendant on the evening before the killing told witness that he (defendant) did not know whether deceased had a pistol or not, that he (defendant) did not need any search warrant to "tend to this nigger" (meaning deceased), he would "tend" to him without a warrant, was admissible, independent of the predicate laid to defendant while he was being examined as a witness. This statement, under the evidence in this case, was in the nature of a threat, made by defendant before the killing, and for that reason was admissible. Moton v. State, 13 Ala. App. 43, 69 South. 235; Ingram v. State, 13 Ala. App. 147, 69 South. 976; Id., 195 Ala. 695, 70 South. 1013.

[10] Testimony that deceased had had trouble with other parties at another time and place could not be shown by defendant in the examination of his witnesses. This character of testimony is sometimes admissible on cross-examination of character witness to show the estimate placed upon character by the witness testifying, but not for the purpose of proving facts connected with the issue then being tried.

[11] The defendant, after having been examined as a witness and excused from the stand, was recalled by the defendant to the witness stand and asked this question, "What was the conversation between you and Mr. Cox in the store at the time referred to by Mr. Cox?" The state objected, and the court sustained the objection. On cross-examination of defendant, after bringing out the fact of a conversation between defendant and Cox, and a part of what was said, the solicitor asked the defendant this question, "You didn't tell him anything like that; you didn't have any such conversation with him like that at any place?" The defendant began his answer as follows: "I was telling him—." At this point the solicitor interrupted the defendant's answer, and never permitted him to complete the answer,

the cross-examination proceeding along other lines. The state then offered Cox, and by him proved what purported to have been a statement made by defendant in the conversation inquired about, which statement, we have said above, was admissible, as tending to prove a threat.

It has long been recognized as a true and fair rule of evidence that, where a part of a conversation has been testified to by one party, the other party has a right to bring out all of what was said, or, if one party has been allowed to testify to what was said in a conversation, the adverse party should be allowed to testify as to his version of the same conversation. Gibson v. State, 91 Ala. 64, 9 South. 171; Davis v. State, 131 Ala. 10, 31 South. 569; Dodson v. State, 86 Ala. 60, 5 South. 485; Montgomery v. State, 2 Ala. App. 25, 56 South. 92; Ray v. State, 147 Ala. 5, 41 South. 519; Williams v. State, 103 Ala. 33, 15 South. 662. Nor can it be said that this testimony was not in rebuttal. The testimony would have been premature until Cox had testified to the conversation.

The court in its oral charge and in the written charges given at the request of defendant fully and clearly defined the law of self-defense and burden of proof. The written charges refused assert no new or novel propositions, and, where these charges assert legal propositions applicable to the facts in this case, they are fully covered by the various charges given at the request of defendant and in the oral charge of the court.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.