198 So. 261

### WALDEN v. STATE.
### 7 Div. 528.

Court of Appeals of Alabama.
June 18, 1940.

Rehearing Denied Aug. 6, 1940.

Thos. S. Lawson, Atty. Gen., and Willard McCall, Asst. Atty. Gen., for the State.

McCord & Miller and Wm. Hubert Burns, all of Gadsden, for appellant.

RICE, Judge.

Appellant was put on trial under an indictment charging him with the offense of murder in the first degree; it being alleged, specifically, that he "unlawfully and with malice aforethought, killed Doyle Davis by shooting him with a pistol or gun, contrary to law and against 'the peace and dignity of the State of Alabama." He was convicted of the offense of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for the term of ten years.

It was without dispute that appellant, the chief of police of the town of Altoona, in an altercation with deceased, Doyle Davis, and his brother, Verdell Davis, shot them both with his pistol. And that, later, Doyle Davis died.

The State's testimony was to the effect that the shooting of Doyle Davis (and, for that matter, though not of present interest, Verdell Davis) was entirely unjustified. That on behalf of appellant was to the effect that he acted in self-defense, as that

term was fully made clear to the jury by the court.

■ All the issues involved were strictly for the jury.

We are not unmindful of our duty under the terms of Code 1923, Sec. 3258. And we have endeavored to perform it.

But appellant was represented, below, as he is here, by able counsel. And they have filed with us a brief which evinces careful study of the record, with a view to pointing out errors of the lower court which demand a reversal of the judgment of conviction.

We feel warranted in confining our remarks to the rulings urged upon us as error, prejudicial to appellant, in said brief. And shall do so.

It is first insisted, as we understand the argument, that the trial court committed reversible error in overruling appellant's motion to quash the venire—general and special—as for that the court excused six of the jurors, outside the presence and hearing of appellant. But the record bears out no such contention.

Much argument is devoted by astute counsel for appellant—who frankly stated at the beginning of the proceedings that, as this was a capital case, they deemed it necessary "to take advantage of every legal technicality"—to this matter of the court's excusing these six jurors.

The bill of exceptions contains a very long—and, we assume, complete—colloquy between the court, counsel representing defendant (appellant), and counsel representing the State,—with rulings, wherever called for, always in favor of defendant's contentions.

Distinguished counsel for appellant, in their brief filed here, make the astonishingly unkind remark that: "If this court will read all the conversations between the attorney for the appellant and the court on the various matters which came up over the selection of the jury, this court will be convinced that the trial court was, at said time, greatly confused and made contradictory statements." And this further, equally unkind: "In all fairness to the court, we are led to believe that this was unintentional on his part but was made because the trial court was nervous, was new on the bench and did not take sufficient time to thoroughly go into the matter."

And then counsel, aforesaid, solemnly asseverate that it is their opinion that the "arbitrary action of the trial court" had the effect to lead "the jury to believe that the trial court really wanted the appellant convicted."

Now this court has read, carefully, "all the conversations between the attorney for the appellant and the court on the various matters which came up over the selection of the jury;" and, while it may be true that the learned trial court was "nervous and new on the bench,"—all judges must at some time be "new on the bench," and a great many of us are "nervous," when dealing with matters affecting the very life of a human being—as here—yet we are far from persuaded that he "did not take sufficient time to thoroughly go into the matter."

To the contrary, it is clear to us that the court did "take sufficient time to thoroughly go into the matter." And his seeming "contradictory statements" were plainly caused by his manifest desire to accede to every request of appellant's aggressive counsel, and accord to appellant every debatable right, to which he was entitled under the law. The entire colloquy, and the rulings concomitant, convince us that there was nothing of which appellant could legitimately complain.

■ The alert manner in which the court retraced—at appellant's complaint—and corrected, any questionable step, persuades us that, so far from leading the jury to believe that the court "really wanted the appellant convicted," they must have been impressed that the court was painstakingly cautious to see that his rights were protected. The impression abides with us, from a reading of the entire proceedings, that able counsel for appellant were simply —but in the strict discharge of their duty as they saw it—making good their expressed determination "to take advantage of every legal technicality."

The cases of Crump v. State, 28 Ala. App. 103, 179 So. 392; Stinson v. State, 223 Ala. 327, 135 So. 571, and Smallwood v. State, 235 Ala. 425, 179 So. 217, cited and urged upon our consideration by appellant's counsel, are each without application here. And this because the acts of the court in connection with the selection of the jury condemned in those cases were not parallelled in the instant case.

After the jury lists were made up, and appellant and the State were engaged in alternately striking names from it under the law, it was discovered that said lists contained the name of one juror who had been

regularly and legally excused from service—he being a person under the age of twenty-one years. The trial court ordered both the parties to strike out this person's name, and proceed with their selection of the jury. And appellant moved for a continuance and objected to the overruling of his motion—reserving an exception.

■ We do not think error is thus shown. It is obvious that the lists, after the striking out of this disqualified person's name—left on there by a mere clerical error on the part of the Clerk—contained many more names than the minimum of thirty, prescribed by law (Code 1928, Sec. 8646). And we are entirely unable to see how appellant could have suffered injury by the action noted. Evans v. State, 209 Ala. 563, 96 So. 923; Bridges v. State, 225 Ala. 81, 142 So. 56; Fowler v. State, 236 Ala. 87, 181 So. 266; and Supreme Court Rule 45.

After the State had closed its testimony in chief, appellant's counsel informed the court that they "had information" the jury trying the case had been allowed to separate "yesterday afternoon"—meaning the afternoon before the report presently being made to the court by the counsel—the counsel further stating, with reference to said "information": "How true or not, I (we) don't know." And upon this "information," counsel "moved that the court take the case away from the jury and enter a mistrial."

The court, feeling that it had personal knowledge of the occurrence complained of, at first stated that it did not care to hear any testimony on it. And overruled appellant's motion—to which action exception was reserved.

Upon further reflection—and at the end of an extended colloquy between counsel—both for the State and defendant (appellant)—and the court—all without the hearing and presence of the jury—the court reconsidered its action, and offered to allow appellant's counsel to submit any evidence in their possession to substantiate their "information." But counsel then refused to offer any testimony—if indeed they had any —on the matter; candidly stating—to use their very language: "I (we) am (are) willing to stand on the ruling your Honor made, that you will not let us put up any oral testimony on this motion."

■ Now all this smacks, frankly, to us, of trifling with the court, to say the least

of it. Counsel, whom we know to be of long and active experience, seem to have forgotten, for the moment, that courts of law are instituted for the purpose of administering justice between parties litigant —the State and the appellant, here—on the merits of controversies; and not to furnish a forum for a battle of wits between astute counsel and the court—where, mayhaps, the court may be tripped into an unwitting ruling fraught with error. Of course the court's prior refusal—in fieri, so to speak— to allow counsel to introduce testimony to substantiate their "information," if error— which we do not assert—was completely cured, or rendered innocuous, by its later, in the same "colloquy," good faith offer to hear such testimony. And that leaves no exception before us, in that regard, worthy of consideration.

■ In the opinion in the case of Gary v. State, 18 Ala.App. 367, 92 So. 533, 534, we said—speaking through our late, loved and lamented brother Wm. H. Samford: "While it is undoubtedly the law that a causal connection must be shown between the blow stricken by defendant and the death of deceased, and that this fact must be proven beyond a reasonable doubt, such fact can be established by circumstances as well as by direct evidence."

■ Here, we have carefully read, and considered en banc, the evidence bearing upon the proximate cause of the death of Doyle Davis, the person appellant admittedly shot with his pistol; and for the murder of whom he was on trial. And said evidence, to our minds, fully warranted the jury in finding that the deceased, Doyle Davis, came to his death as the proximate result of the pistol wound inflicted by appellant. No more detailed discussion of said evidence seems to be required.

The criticisms—rather general in nature —and presenting nothing specifically for our consideration (though if there were exceptions to portions which were erroneous, they would not have to be so presented), of the trial court's comprehensive oral charge, contained in appellant's brief filed here, are worthy of but slight comment.

It is manifest that when said charge is read as a whole, and in connection with the numerous written charges given to the jury at appellant's request—as it should be— there is not the slightest merit in said criticisms.

Every applicable principle of law was fully, carefully, and, we think, correctly

given in charge to the jury. Not only does this fact render inapt counsel's criticism of isolated portions of said charge; but it demonstrates that there was error in the refusal of none of the written, requested, charges in the record, endorsed "refused," and signed by the trial judge (Code 1923, Sec. 9509)—regardless of whether or not any one of said written charges should, otherwise, have been given to the jury.

We find, nowhere, an error for which the judgment of conviction ought to be reversed. And it is affirmed.

Affirmed.

